**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**THAD TATUM**                                          **CIVIL ACTION**

**VERSUS**                                              **NO. 14-2980**

**DOCTOR'S ASSOCIATES, INC., ET AL.**                   **SECTION "B"(1)**

<u>**ORDER AND REASONS**</u>

Before the Court is Thad Tatum's (hereinafter "Plaintiff" or "Tatum") "Motion for Summary Judgment." Rec. Doc. 46. Defendant, Kostmayer Mortgage Corporation (hereinafter "Kostmayer" or "Defendant"), filed a memorandum in opposition. Rec. Doc. 55. Plaintiff thereafter filed a reply memorandum. Rec. Doc. 58. Additionally, Plaintiff filed a "Motion in Limine to Exclude the Expert Testimony of Defendant's Experts." Rec. Doc. 59. Defendant filed an opposition to that motion as well, and Plaintiff again filed a reply. Rec. Docs. 60, 64. For the reasons outlined below,

**IT IS ORDERED** that the Motion in Limine is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

I.   <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

Plaintiff filed the instant suit against Doctor's Associates Inc. (hereinafter "Doctor's") and Kostmayer alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.* Rec. Doc. 1 at 1. In an amended complaint, Plaintiff added Subway Real Estate Corporation ("Subway") as an additional

1

defendant. Rec. Doc. 8 at 1. Tatum, who suffers from paraplegia, claims that he experienced serious difficulty accessing the property owned by Kostmayer and operated by Doctor's and Subway. Rec. Doc. 8 at 2-3. Due to his disability, Tatum requires the use of a wheelchair for mobility. Rec. Doc. 1 at 2. The property in question is a shopping center located at 2100-2114 Veterans Boulevard in Metairie, Louisiana. Rec. Doc. 1 at 2. Kostmayer is the owner of that property, and Doctor's is the operator of a Subway franchise located there. Rec. Doc. 1 at 2. On March 27, 2015, this Court granted Plaintiff's motion to dismiss both Doctor's and Subway pursuant to a settlement agreement between the parties, leaving Kostmayer as the lone defendant. Rec. Docs. 14, 15.

When Tatum last visited the property on December 15, 2014, he allegedly encountered numerous architectural barriers, making it extremely difficult for him to access the goods and services offered at the establishments. The complaint avers that Tatum intends to return to the property but fears that he will again encounter the same barriers to access. Tatum's complaint identifies a number of barriers that he claims are the responsibility of Kostmayer.[1] Plaintiff claims that removal of

---

[1] Tatum alleges that the following barriers are Kostmayer's responsibility: insufficient disabled parking, the curb ramp is "built up and into the sole disabled parking space," the curb ramp has excessive slopes and/or "non-compliant side flares," no vertical signage marking the lone disabled parking spot, the lone disabled parking space "is not adjacent to an access aisle,"

these barriers would provide him with an equal opportunity to access the goods and services at that location. Rec. Doc. 8 at 8.

Kostmayer claims that it first learned of the alleged ADA violations through service of the instant lawsuit. Rec. Doc. 55-3 at 2. Once made aware of the issue, Defendant hired an architect to inspect the property and recommend changes. 55-3 at 2. Pursuant to those recommendations, "Defendant built a new ramp with a handrail, painted the proper number of reserved parking spaces, and installed concrete wheelstops to prevent car bumpers from intruding into the walkway." 55-3 at 2. Defendant did not address all of the barriers identified by Plaintiff. Both parties have employed experts to address the property's compliance with the ADA and discovery is substantially complete. In response to this discovery, Plaintiff filed the instant Motion for Summary Judgment. In response to Defendant's expert's reports and contentions, Plaintiff subsequently filed the pending Motion in Limine.

## II.  **THE PARTIES' CONTENTIONS**

While admitting that Kostmayer modified some of the barriers initially identified, Tatum maintains that numerous issues remain. Rec. Doc. 46-3 at 11-13. Plaintiff's engineering expert, Nicholas Heybeck, found twelve (12) ADA barriers existing at the property.

---

the parking space is also not level and has too great of a cross slope, and the accessible route at the property is too narrow due to a garbage can and car bumpers intruding on it.

Rec. Doc. 46-3 at 11. Further, Tatum points to Heybeck's report and the report of his financial expert, Charles Maffey, for the proposition that the remaining barriers can be removed without much difficulty or expense, meaning they are "readily achievable" under the ADA. Rec. Doc. 46-3 at 11-12. Tatum goes on to claim that two of the barriers are subject to the ADA's "new construction and alteration" standard, and that they fail to comply with that standard. Rec. Doc. 46-3 at 33-34. Plaintiff urges this Court to grant summary judgment in his favor, and he seeks an order: (1) declaring Defendant in violation of the ADA for "failing to remove architectural barriers where it is readily achievable to do so;" (2) declaring Defendant in violation of the ADA for "failing to comply with the new construction and alteration requirement;" and (3) "granting an injunction requiring Defendant to remove the architectural barriers." Rec. Doc. 46 at 1.[2]

Defendant seeks a denial of Plaintiff's Motion for Summary Judgment, claiming that Plaintiff has failed to establish that any of the recommended modifications are readily achievable. Rec. Doc. 55-3 at 5. Further, Defendant maintains that numerous issues of material fact remain that preclude summary judgment at this time. Rec. Doc. 55-3 at 5. Kostmayer bases this claim on the findings of

---

[2] Plaintiff also spends a significant portion of his brief addressing his standing to bring this suit. However, because Defendant does not contest standing and there appears to be no issue with Plaintiff's standing, it is a non-issue here.

its two experts whose reports contend that the alterations recommended by Plaintiff are not readily achievable under the ADA. Additionally, Kostmayer avers that this Court should disregard the testimony of Plaintiff's engineering expert because he is not licensed in Louisiana. Rec. Doc. 55-3 at 6-7. Defendant also claims that there is no new construction triggering the use of a heightened standard. Rec. Doc. 55-3 at 17. In sum, Defendant's opposition claims that it has complied with the "letter and spirt of the ADA," and that the ADA does not require further modifications of the property. Rec. Doc. 55-3 at 5.

Plaintiff's reply memorandum re-urges a number of arguments from his Motion for Summary Judgment while also attacking the credibility and reliability of Defendant's experts. *See* Rec. Doc. 56-2. Plaintiff's Motion in Limine follows a similar path, asking this Court to exclude the testimony of Defendant's experts, Robert Olivier and John Page. Rec. Doc. 59 at 1. First, Plaintiff claims that Olivier's testimony should be excluded because it is unreliable and because his report does not comply with the Federal Rules of Civil Procedure. With respect to Defendant's financial expert, John Page, Plaintiff seeks the exclusion of his testimony because he relies on Olivier's opinions, which Tatum claims are unreliable. Rec. Doc. 59-1 at 12.

Kostmayer's opposition to the Motion in Limine contends that Olivier relied upon the measurements made by Plaintiff's expert as

well as his own forty years of experience to come to reasonable conclusions about the amount of work and cost required in making the recommended changes. *See* Rec. Doc. 60‑1. More specifically, Kostmayer claims that Olivier incorporated by reference previous letters and an affidavit, that he attached a site plan and pictures of the facility, and that he considered the appearance of the property—all of which supported his conclusion. Kostmayer also argues that Page's testimony is reliable because he relied on Olivier's report in addition to the opinions of Plaintiff's experts. Rec. Doc. 60‑1 at 7. For these reasons, Defendant asks the Court to deny Plaintiff's Motion in Limine.

## III. LAW AND ANALYSIS

The Court will first address Plaintiff's Motion in Limine as its resolution is essential to deciding the Motion for Summary Judgment.

### a. Motion in Limine

As referenced above, Plaintiff seeks to have Defendant's expert reports deemed inadmissible. Contrary to Plaintiff's assertions, the opinions in the reports at issue stand muster under *Daubert* and the applicable rules of admissibility. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); FED. R. EVID. 702. Defendant's experts' reports are thus admissible. However, legal conclusions from any party's experts will not be considered.

6

**b. Motion for Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**1. Requirements Under the ADA**

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment

7

of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The Act goes on to define discrimination as including "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The term "existing facilities" includes those structures built prior to the Act taking effect on January 26, 1992, which have not been modified since that date. *Greer v. Richardson Indep. Sch. Dist.*, 752 F. Supp. 2d 746, 752 (N.D. Tex. 2010). The parties here concede that the facilities in question were built prior to the 1992 ADA effective date. *See* Rec. Docs. 46-3 at 29-33; 55-3 at 8.

However, Plaintiff contends that one of the twelve alleged architectural barriers is subject to a different standard due to alterations to the property. Rec. Doc. 46-3 at 33-34. When an existing place of public accommodation undergoes alterations after the 1992 effective date, more stringent architectural standards apply. In those cases, the alterations "shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. § 36.402(a)(1). The Court will first address whether any

alterations occurred so as to trigger the "maximum extent feasible" standard.

## 2. The Alterations Standard

Tatum maintains that Defendant made alterations and triggered the heightened standard by converting two conventional parking spaces into handicap-accessible spaces. Rec. Docs. 46-3 at 33; 56-2 at 16. For the purposes of determining whether the heightened standard applies, an alteration is defined as "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof." 28 C.F.R. § 36.402(b). Examples of such alterations include remodeling, renovation, rehabilitation, reconstruction, and changes or rearrangement in structural parts. 28 C.F.R. § 36.402(b)(1). Alterations do not include normal maintenance or painting unless they affect the usability of the facility or any part thereof. *Id*.

Interpreting the meaning of alterations under this subsection, the Department of Justice ("DOJ") stated that "'usability' is to be read broadly to include any change that affects the usability of the facility, not simply changes that relate directly to access by individuals with disabilities." 28 C.F.R. Pt. 36, App. B. This interpretation can be read to mean that all changes directly relating to access by individuals with disabilities indisputably affect usability. Based on the same

9

interpretation, the term can also be read broadly to include other changes that affect usability that are not so related. The United States District Court for the Eastern District of Pennsylvania adopted the same broad interpretation in the context of Title II of the ADA, noting that the ADA is a remedial statute designed to eliminate discrimination and it "must be broadly construed to effectuate its purpose." *Kinney v. Yerusalim*, 812 F. Supp. 547, 551 (E.D. Pa. 1993) (citing *Tcherepnin v. Knight*, 389 U.S. 332, 335 (1967)). This Court agrees and will consider Kostmayer's reallocation of parking spaces with that in mind.

Defendant contends that the conversion of general parking spots to accessible parking spots involved only re-painting and thus does not fall within the definition of an alteration. Rec. Doc. 55-3 at 17. However, Defendant ignores a significant portion of the applicable regulation's wording, specifically where it says painting is not an alteration *unless it affects the usability of the facility*. 28 C.F.R. § 36.402(b). Thus, the question is whether converting two parking spots to handicap-accessible spots affects usability. In light of the DOJ's interpretation that the term usability includes changes that relate to access by individuals with disabilities, this Court is convinced that the conversion qualified as an alteration. *See* 28 C.F.R. Pt. 36, App. B. The conversion of the two spots undoubtedly made the facility more accessible to individuals with disabilities by making two more

10

spots available for parking. The Defendant's act created more parking options for individuals using wheelchairs and individuals with other disabilities who require wider parking spaces and spaces closer to the facilities. Under a broad interpretation of the term, this change affected the usability of the spaces, and the property as a whole, by increasing access. Having done so, the act qualified as an alteration, subjecting the Defendant to the "maximum extent feasible" standard. Therefore, the altered portion of the property, the parking spots, must comply fully with applicable accessibility standards unless it is "virtually impossible" to do so. 28 C.F.R. § 36.402(c). Plaintiff claims the altered portion does not fully comply because the two newly-accessible spots do not have the proper slope. Rec. Doc. 46-3 at 33.

Plaintiff cites to sections 4.5.2 and 4.6.3 of the Americans with Disabilities Act Accessibility Guidelines ("ADAAG" or "the Guidelines") to demonstrate that the two new handicap-accessible parking spots do not comply with applicable accessibility standards. Rec. Doc. 46-3 at 30. According to Plaintiff, the slope of the ground surface for the handicap-accessible spots exceeds the maximum permissible slope of 2.1% under ADAAG 4.6.3, making it difficult for patrons such as Plaintiff to assemble a wheelchair after parking. Rec. Doc. 46-3 at 30. Defendant does not contest that the slope of the parking spaces fails to comply with the

Guidelines. *See* Rec. Doc. 55-3 at 4-5, 17-18. Instead, Defendant argues that: (1) the parking spaces do not have to comply with the Guidelines because the "maximum extent feasible" standard does not apply; (2) that the proposed modification would provide no increase to public safety; and (3) even if the conversion of the spots did qualify as an alteration, "only the 'altered element,' i.e. the paint, need be compliant with the ADA." Rec. Doc. 55-3 at 4-5, 17-18. All of Defendant's arguments lack merit.

For the reasons discussed above, the conversion of the spots does qualify as an alteration, triggering the heightened standard, and the risk to public safety is irrelevant because the standard requires compliance with the Guidelines unless doing so is virtually impossible. Accordingly, Defendant's first two arguments are easily dismissed. Defendant's third argument is based upon a disingenuous reading of the applicable regulation. Kostmayer cites 28 C.F.R. § 36.402(b)(2) to claim that only the altered element must comply with the applicable guidelines. However, Kostmayer ignores the surrounding language. In full, the regulation states: "If existing elements, spaces, or common areas are altered, then each such altered element, space, or area shall comply with the applicable provisions of Appendix A of this part." 28 C.F.R. § 36.402(b)(2). Here, Defendant altered the entire parking space by changing its use from general parking to handicap-accessible parking, meaning that all aspects of the parking space must comply

12

with the ADA. Kostmayer's argument that only the paint need comply with the ADA is frivolous.

Accordingly, this Court finds that the two recently converted parking spaces are in violation of the ADA. Defendant should remedy the architectural barriers existing in those spaces, ensuring that all aspects of both spots comply with the ADA to the maximum extent feasible. It is undisputed that all of the other alleged barriers are part of the "existing facility," meaning the Court must analyze them under the less-stringent "readily achievable" standard.

**3. Whether Architectural Barriers Exist and whether their Removal is Readily Achievable Under the ADA**

As referenced above, it is a violation of the ADA if the owner of a place of public accommodation fails to remove architectural barriers from an existing facility when such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Here, Tatum cites the report of his retained-expert, Nicholas Heybeck, to claim that eleven (11) architectural barriers exist within the existing facility and that their removal is readily achievable.[3] *See* Rec.

---

[3] In addition to the issues with the two parking spaces discussed above, Heybeck's report alleges that the following barriers also exist: (1) the route behind the two new accessible spaces to the curb ramp has too great of a cross slope; (2) the ground surface of the single accessible parking spot in front of Adobe (the "old spot") is broken and cracked, resulting in non-compliant variations in the surface level; (3) the slope of the sidewalk approaching Adobe from the curb ramp is too great; (4) at the entrance to Adobe, the ground surface slope within the required door maneuvering clearance is too great; (5) at the entrance to Adobe, there is a rug within the door maneuvering clearance that is causing non-compliant changes in level; (6) at the entrance to Unit 2112, the ground surface slope within the door maneuvering clearance is too great; (7) at the entrance to Subway, the ground surface slope within the door maneuvering clearance is too great; (8) on the sidewalk route from Subway to the LSU Merchandise sports shop, the

13

Doc. 46-3 at 29-33. All of the alleged barriers relate to issues with the parking lot and the sidewalk/walkway along the entrances to the businesses at the property. To resolve whether these issues violate the ADA, this Court must: (1) determine whether any of them actually qualify as architectural barriers; and (2) if they do, decide whether their removal is ready achievable.

### A. Architectural Barriers Under the ADA

Tatum maintains that all of the issues identified by Heybeck qualify as architectural barriers because they are not in compliance with the Guidelines. Rec. Docs. 46-3 at 29-33, 56-2 at 7-8. However, Kostmayer contends that non-compliance with the Guidelines does not necessarily establish the existence of a barrier in the context of existing facilities. Rec. Doc. 55-3 at 15. Defendant argues that the standards are to be used as a guide when considering issues with existing facilities, meaning strict compliance is not required. Rec. Doc. 55-3 at 15. In addition to using the standards as a guide, Kostmayer claims that the Court may consider other factors such as the minimal risk to public safety posed by the alleged barriers.

---

cross slope is too great; (9) at the entrance to the LSU Merchandise sports shop, the ground surface slope within the door maneuvering clearance is too great; (10) at the entrance to Beyond Nails and Spa, the ground surface slope within the door maneuvering clearance is too great; and (11) with regard to the general parking lot area, there is accessible parking at only one corner of the facility (near Adobe), leaving too great of a travel distance to some of the shops and services. Rec. Doc. 46-4 at 1-26.

Defendant correctly asserts that, in this context, the Guidelines are to be used as a guide, not a requirement. *See Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 435 F. Supp. 2d 1217, 1226 (N.D. Ga. 2005) ("However, it is clear that the Standards are not intended to prescribe what must be done to address an alleged barrier in a facility that existed at the time the ADA was passed. They are to be used as a guide, not a requirement."); *Schlesinger v. Belle of Orleans LLC*, No. 14-2593, 2015 WL 5944452, at *7 (W.D. La. Aug. 19, 2015). Nevertheless, other than pointing to the fact that Plaintiff ultimately bought something from a vendor at the property, Defendant has failed to provide any evidence that the alleged barrier does not prohibit an individual using a wheelchair from accessing the property in a manner comparable to that of a non-disabled person. In fact, the evidence produced by Plaintiff supports the allegations made in the complaint that Plaintiff experienced great difficulty in accessing the goods and services. Simply because the Plaintiff ultimately achieved his goal of making a purchase does not mean that he did so in a manner comparable to that of non-wheelchair-using patrons. *See Gathright-Dietrich*, 435 F. Supp. 2d at 1226 (applying the following test to determine whether a barrier exists: "does the alleged barrier, under the circumstances of a particular case, actually or effectively preclude a wheelchair patron from using an existing facility on terms sufficiently comparable to

15

non-wheelchair patrons?"); *Panzica v. Mas-Maz, Inc.*, No. 05-2595, 2007 WL 1732123, at *6 (E.D.N.Y. June 11, 2007); *Gaylor v. Greenbriar of Dahlonega Shopping Center, Inc.*, 975 F. Supp. 2d 1374 (N.D. Ga. 2013). Defendant has failed to rebut Plaintiff's prima facie evidence of architectural barriers. *See Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054, 1067 (E.D. Cal. 2006) ("[N]on-compliance with ADAAG standards can demonstrate a prima facie barrier, which the defendants may rebut by demonstrating that despite the non-conformance with the guidelines, the alleged barrier is not actually hindering equal access."); *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357, 1368 (S.D. Fla. 2001). Thus, the only remaining question is whether removing the barriers is readily achievable.

### B. Readily Achievable Standard

Under the ADA, the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The statute also lists a number of factors that courts should consider when determining whether the removal of a barrier is readily achievable:

> (A)  the nature and cost of the action needed under this Chapter;
>
> (B)  the overall financial resources of the facility involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

>> (C) the overall financial resources of the
>> covered entity; the overall size of the
>> business of a covered entity with respect to
>> the number of its employees; the number, type,
>> and location of its facilities; and
>>
>> (D) the type of operation or operations of
>> the covered entity, including the composition,
>> structure, and functions of the workforce of
>> such entity; the geographic separateness,
>> administrative or fiscal relationship of the
>> facility or facilities in question to the
>> covered entity.

42 U.S.C. § 12181(9). The initial burden of proof rests with the Plaintiff to show that he requested a modification and that the modification is readily achievable. *Johnson v. Gambrinus Company/Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). *See also Schlesinger v. Thibodaux*, No. 13-6237, 2014 WL 527657, at *3 (E.D La. Feb. 7, 2014). If Plaintiff meets this burden, the burden of persuasion then rests with the Defendant to show that removal of the barrier is not readily achievable. *Colorado Cross Disability Coalition v. Hermanson Familt Ltd.*, 264 F.3d 999, 1002-03 (10th Cir. 2001). Both Plaintiff and Defendant present the testimony of engineering and financial experts to argue their case.

Initially, Kostmayer challenges the admissibility of testimony by the Plaintiff's engineering expert, Nicholas Heybeck. Defendant, relying on a Louisiana statute making it unlawful to practice engineering in the state without a license, claims that the court should exclude Plaintiff's expert's testimony because he

is not a licensed engineer in Louisiana. Rec. Doc. 55-3 at 6-7. Defendant's argument fails for the sole reason that Louisiana statutes do not govern the admissibility of evidence in federal courts. *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1262 (5th Cir. 1986) ("[W]e need not concern ourselves with the Louisiana statute because the statute does not apply in federal court; questions concerning the admissibility of evidence in federal court are governed by the Federal Rules of Evidence."). *See also* FED. R. EVID. 702. Additionally, as explained above, Defendant's experts' reports are also admissible.

As none of the expert testimony is barred, the first question is whether Plaintiff meets his initial burden. Heybeck's report identifies each architectural barrier and includes with it a recommended modification to resolve the issue. *See* Rec. Doc. 46-4. Each modification appears reasonable on its face, and Heybeck affirms that each modification can be made "without much difficulty from an engineering perspective." Rec. Doc. 46-4 at 44. Further, Heybeck indicates his belief that it would cost $72,269 to remove the barriers based upon a conservative pricing model using RSMeans construction cost information. Rec. Doc. 46-4 at 42-43. Charles Maffey's report contends that such a cost would have minimal impact upon the Defendant's financial resources and the operation of the site. Rec. Doc. 46-4 at 53-54. Maffey analyzes each of the statutory factors before concluding that the modifications

18

recommended by Heybeck are accomplishable without much difficulty or expense. Rec. Doc. 46-4 at 57-61. Based on the information and opinions provided in these expert reports, the Court is convinced that Tatum has met his initial burden of showing that the modifications are readily achievable.

In rebuttal, Defendant relies on the expert report of Architect Robert Olivier to counter the findings of Heybeck and the report of Professor John R. Page to counter Maffey's financial projections. *See* Rec. Doc. 55-3. Olivier contends that Heybeck's recommended piecemeal modifications would create additional hazards and barriers, rendering his plan unreasonable. Rec. Doc. 55-6 at 3-5. Accordingly, he claims that the only feasible means of accomplishing the recommended modifications would be to demolish and fully replace the sidewalk and parking lot. Rec. Doc. 55-6 at 3-5. Olivier further argues that RSMeans is not the best method for determining the cost of repairs. Rec. Doc. 55-6 at 3. He avers that a more reliable estimate would come from a local contractor. Rec. Doc. 55-6 at 3. Accordingly, he got a quote from Boh Bros. Construction Co., LLC for the cost of replacing the sidewalk and parking lot, which they estimated to cost $517,000. Rec. Doc. 55-9 at 3. Finally, Olivier raises the issue of Jefferson Parish zoning laws which would complicate the matter and increase costs if the parking lot must be replaced. Rec. Doc. 55-6 at 4.

Based on Olivier's assessment, the Heybeck report, the Maffey report, and other financial documents for Kostmayer, Page concluded that the modifications suggested by Heybeck are not accomplishable without great difficulty or significant expense. Rec. Doc. 55-9 at 4. He claims that the construction costs in addition to architect fees, permitting fees, the resulting loss of business, and other related costs would be "crippling" to Kostmayer based upon the company's current cash balance of $86,298.81. Rec. Doc. 55-9 at 3. Clearly, the parties' experts have reached vastly different conclusions regarding the achievability of the recommended modifications. Viewing all of the evidence in a light most favorable to the Defendant, the Court is convinced that a reasonable trier of fact could find for the non-moving party based upon the reasonable conclusions of Defendant's experts. *See Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272, 273 (5th Cir. 1991). Accordingly, there exist genuine issues of material fact related to whether the recommended modifications are readily achievable, making summary judgment inappropriate at this time.

## IV.   <u>CONCLUSION</u>

Plaintiff has failed to show that Defendant's experts' opinions are unreliable or inadmissible for any other reason. Yet, Tatum has demonstrated that the two newly-converted, handicap-accessible parking spaces are in violation of the ADA because they do not conform to applicable guidelines as they must under the

maximum extent feasible standard. Plaintiff has also adequately demonstrated that eleven other architectural barriers are present within and around the existing structure. Nevertheless, there remain genuine issues of material fact as to whether removing those barriers is readily achievable. In light of those findings,

**IT IS ORDERED** that Plaintiff's Motion in Limine is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is denied with respect to all barriers falling under the existing facility standard. However, summary judgment is granted with respect to the one barrier that falls under the alteration standard. Accordingly,

**IT IS FURTHER ORDERED** that Defendant bring the two newly-converted, handicap-accessible parking spaces into compliance with the ADA by eliminating all barriers to the maximum extent feasible.

New Orleans, Louisiana, this 4th day of March, 2016.

_____
UNITED STATES DISTRICT JUDGE